## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA LOUISE CLARY a/k/a LINDA CLARY UMBERGER individually and on behalf of THE ESTATE OF JOHN ANTHONY CLARY UMBERGER (deceased),<br><br>      Plaintiff,<br><br>- *against* -<br><br>CHRISTIAN ADVOCATES SERVING EVANGELISM, INC., THE AMERICAN CENTER FOR LAW AND JUSTICE, INC., 34 EAST 61ST STREET, LLC, JAY SEKULOW, and JORDAN SEKULOW,<br><br>      Defendants. | Case No. 1:25-cv-05386-MKV |

---

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND TO STRIKE ALLEGATIONS FROM THE AMENDED COMPLAINT

---

**BROWN RUDNICK LLP**

Michael J. Bowe
Andrew T. Sutton
Kate E. Fisch
7 Times Square
New York, NY 10036
Phone: (212) 209-4800
Fax: (212) 209-4801
Email: mbowe@brownrudnick.com
      atsutton@brownrudnick.com
      kfisch@brownrudnick.com

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 4

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.    Plaintiff Fails To State A Claim Of Negligence. ....................................................... 7

    A.    Plaintiff Concedes That Defendants Owed Mr. Umberger Only A Duty Of Reasonable Care. .................................................................................................................... 8

    B.    Plaintiff Concedes Defendants Fully Complied With The Duty of Reasonable Care And Were Not Negligent In Securing the Townhouse. ................................................. 8

    C.    No Alleged Act Or Omission Of Defendants' Proximately Caused Mr. Umberger's Death. .................................................................................................................... 9

II.   Plaintiff Fails To State A Claim For Negligent Infliction Of Emotional Distress. ........ 11

    A.    The Complaint Fails To Allege Any "Extreme And Outrageous" Conduct On The Part Of Any Defendant. ................................................................................................... 12

    B.    Plaintiff's Allegations Fail To Satisfy Any Of The Three Narrow Theories Required To Bring An NIED Claim. ............................................................................................ 12

III.  Plaintiff Fails To State A Claim For Tortious Interference With Contract. ................. 14

    A.    Plaintiff Lacks Standing To Assert The Tortious Interference Claim. ............................. 15

    B.    Plaintiff's Tortious Interference Claim Fails As A Matter Of Law Because Defendants Were Parties To The Insurance Policy .............................................................................. 16

    C.    Plaintiff Fails To Allege Any Breach Of The Contract Or Resulting Injury. ..................... 17

IV.  Plaintiff Fails To State A Claim For Defamation. ..................................................... 18

    A.    Plaintiff's Defamation Claim Is Barred By New York's Anti-SLAPP Law. .................... 18

    B.    Plaintiff Fails To Allege Any Actionable Defamatory Statements. ................................ 20

V.    In The Alternative, This Court Should Strike Certain Allegations In The Amended Complaint. ............................................................................................................... 22

CONCLUSION ................................................................................................................. 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*600 W. 115th St. Corp. v. Von Gutfeld,*
    80 N.Y.2d 130 (1992) ............................................................................21

*Albert v. Loksen,*
    239 F.3d 256 (2d Cir. 2001) ..................................................................22

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..........................................................................6, 11

*Automatic Findings, Inc. v. Miller,*
    232 A.D.2d 245 (1996) ..........................................................................18

*Baker v. Dorfman,*
    239 F.3d 415 (2d Cir. 2000) ..................................................................13

*Batista v. City of New York,*
    108 A.D.3d 484 (2013) ............................................................................8

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................6, 7

*Bobulinski v. Tarlov,*
    758 F. Supp. 3d 166 (S.D.N.Y. 2024) ......................................18, 19, 22

*Brian v. Richardson,*
    87 N.Y.2d 46 (1995) ..............................................................................20

*Brunengraber v. Firestone Tire & Rubber Co.,*
    214 F. Supp. 420 (S.D.N.Y. 1963) ..........................................................8

*Campoverde v. Sony Pictures Ent.,*
    2002 WL 31163804 (S.D.N.Y. Sept. 30, 2002) ................................11, 12

*Carlyle, LLC v. Quik Park 1633 Garage LLC,*
    160 A.D.3d 476 (2018) ..........................................................................17

*Carney v. Bos. Mkt.,*
    2018 WL 6698444 (S.D.N.Y. Dec. 20, 2018) ........................................12

*Farash v. Cont'l Airlines, Inc.,*
    574 F. Supp. 2d 356 (S.D.N.Y. 2008), *aff'd,* 337 F. App'x 7 (2d Cir. 2009) ............................7

*Finley v. Giacobbe,*
   79 F.3d 1285 (2d Cir. 1996)........................................................................16

*Florman v. City of New York,*
   293 A.D.2d 120 (1st Dep't 2002) .................................................................9

*Gaylord v. Fiorilla,*
   28 A.D.3d 713 (2006) ................................................................................13

*Harris v. New York City Hous. Auth.,*
   187 A.D.2d 362 (1st Dep't 1992) .........................................................10, 11

*Henry-Lee v. City of New York,*
   746 F. Supp. 2d 546 (S.D.N.Y. 2010).........................................................10

*Immuno AG. v. Moor-Jankowski,*
   77 N.Y.2d 235 (1991) ................................................................................21

*Impulsive Music v. Pomodoro Grill, Inc.,*
   2008 WL 4998474 (W.D.N.Y. Nov. 19, 2008) .............................................23

*Johnson v. State,*
   37 N.Y.2d 378 (1975) ................................................................................13

*Jones v. City of New York,*
   80 A.D.3d 516 (1st Dep't 2011) .................................................................13

*Kamdem-Ouaffo v. Balchem Corp.,*
   2018 WL 4386092 (S.D.N.Y. Sept. 14, 2018)..............................................20

*Keller v. Medtronic Sofamor Danek, USA, Inc.,*
   2009 WL 1106266 (N.Y. Sup. Ct. Apr. 14, 2009).........................................13

*Kesner v. Dow Jones & Co., Inc.,*
   2023 WL 4072929 (2d Cir. June 20, 2023) .................................................22

*Kmiotek v. Sachem Cent. Sch. Dist.,*
   176 A.D.3d 1063 (2019) ............................................................................12

*Lama Holding Co. v. Smith Barney Inc.,*
   88 N.Y.2d 413 (1996) ....................................................................14, 15, 16

*Lando v. State of New York,*
   39 N.Y.2d 803 (1976) ................................................................................13

*Low v. Robb,*
   2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ...........................................23, 24

*McPheeters v. McGinn, Smith & Co.*,
    953 F.2d 771 (2d Cir. 1992)........................................................................15

*Milan v. Wertheimer*,
    808 F.3d 961 (2d Cir. 2015)........................................................................7

*Morse v. Weingarten*,
    777 F. Supp. 312 (S.D.N.Y. 1991)............................................................23

*Mortise v. United States*,
    102 F.3d 693 (2d Cir. 1996)........................................................................13

*Novikova v. Greenbriar Owners Corp.*,
    258 A.D.2d 149 (2d Dep't 1999)................................................................9

*Olinski v. New York Cent R Co*,
    162 F. Supp. 23 (W.D.N.Y. 1956)............................................................8

*Reeves v. Associated Newspapers, Ltd.*,
    232 A.D.3d 10 (1st Dep't 2024)................................................................20

*Romanello v. Intesa Sanpaolo S.p.A.*,
    97 A.D.3d 449, *aff'd as modified*, 22 N.Y.3d 881 (2013)......................18

*Schaeffer v. Vera Wang Bridal House, Ltd.*,
    64 F. Supp. 2d 286 (S.D.N.Y. 1999)........................................................10

*Scurry v. New York City Hous. Auth.*,
    39 N.Y.3d 443 (2023)................................................................................8

*Shawe v. Kramer Levin Naftalis & Frankel LLP*,
    2018 WL 984833 (N.Y. Sup. Ct. Feb. 16, 2018)......................................21

*Solomon v. City of New York*,
    66 N.Y.2d 1026 (Ct. App.1985)................................................................7

*Solow v. Stone*,
    163 F.3d 151 (2d Cir. 1998)........................................................................16

*Sprecher v Thibodeau*,
    148 A.D.3d 654 (1st Dep't 2017)..............................................................20

*Tarter v. Schildkraut*,
    151 A.D.2d 414 (1989)..........................................................................9, 11

*Truman v. Brown*,
    434 F. Supp. 3d 100 (S.D.N.Y. 2020)..........................................11, 12, 13

*Wells Fargo Bank Nw., N.A. v. Energy Ammonia Transp. Corp.*,
    2002 WL 1343757 (S.D.N.Y. June 18, 2002) ........................................................................15

**Statutes**

N.Y. Civ. Rights Law § 70-a .........................................................................................................18

N.Y. Civ. Rights Law § 76-a .........................................................................................................19

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................1, 7

Federal Rules of Civil Procedure 12(f) .................................................................................1, 23

Rohrlich, Justin and Feinberg, Andrew, *Mom of murdered gay man claims
    evangelical Trump impeachment lawyer misled cops about son's death:
    lawsuit*, INDEPENDENT (May 29, 2025), available at:
    https://www.independent.co.uk/news/world/americas/nyc-murder-john-
    umberger-lgbtq-lawsuit-trump-lawyer-sekulow-b2760205.html ...........................................22

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f), defendants Christian Advocates Serving Evangelism, Inc. ("CASE"), American Center For Law and Justice, Inc. ("ACLJ"), 34 East 61st Street, LLC ("34 LLC"), Jay Sekulow, and Jordan Sekulow (together, "Defendants"), hereby move to dismiss the Amended Complaint (Dkt. No. 14) filed by Plaintiff Linda Louise Clary a/k/a Linda Clary Umberger ("Plaintiff") individually and on behalf of the Estate of John Anthony Clary Umberger ("Mr. Umberger"), in its entirety for failure to state a claim, or in the alternative to strike certain immaterial, impertinent, or scandalous allegations from the Amended Complaint (the "Motion").

## PRELIMINARY STATEMENT

This case concerns the tragic death of John Anthony Clary Umberger, who was murdered on May 28, 2022 by two non-party criminals, Jayqwan Hamilton and Robert DeMaio (the "Murderers"). Those Murderers have since been convicted and sentenced for their crimes. Defendants, however, had no role in Mr. Umberger's death. Plaintiff's effort to hold them responsible should be rejected out of hand.

For the three months preceding his death, Mr. Umberger had been working for the ACLJ as Director of Diplomacy and Political Programs, assisting the non-profit with its mission of protecting religious and constitutional freedoms through advocacy, education, and litigation. On May 26, 2022, Mr. Umberger's work for the ACLJ took him to New York City, with the primary goal of building ACLJ's contacts and presence here. During the trip he stayed at a townhouse that Defendants had recently purchased on East 61st Street in Manhattan's Lenox Hill neighborhood (the "Townhouse"), and planned to extend his stay through Memorial Day weekend before returning to Washington, D.C.

The night of Friday May 27, 2022, after the work week was over, Mr. Umberger visited a Manhattan bar with friends. While there, he met the Murderers who drugged him with a lethal

dose of lidocaine and fentanyl-laced cocaine. The Amended Complaint does not allege that Mr. Umberger ingested any additional drug after meeting the Murderers at this bar. Mr. Umberger and the Murderers traveled to the locked Townhouse and entered the building. The Murderers then robbed Mr. Umberger and left him to succumb to the lethal drugs they had provided to him. The NYPD subsequently arrested the Murderers, who were charged and convicted of a series of heinous crimes similar to those inflicted on Mr. Umberger.

Three years later, Plaintiff filed a Complaint seeking monetary damages from Defendants for the deplorable and unforeseeable acts of the Murderers, alleging three causes of action against the Defendants: (1) negligence resulting in Mr. Umberger's death, (2) negligent infliction of emotional distress, and (3) tortious interference with contract. Plaintiff's Amended Complaint adds a fourth claim for defamation based on a statement of Defendants' undersigned counsel made in their defense to this suit, in clear exercise of counsel's First Amendment rights. None of Plaintiffs claims are adequately pled under controlling law, and Plaintiff further violates New York's anti-SLAPP laws in bringing the defamation claim to punish statements made by Defendants' representatives in their defense to this frivolous suit.

First, Plaintiff has failed to allege a viable negligence claim. Plaintiff does not (and cannot) allege that Defendants could have foreseen the tragedy that befell Mr. Umberger, or that the Defendants could have done anything to prevent it. The Amended Complaint concedes that Mr. Umberger was given a lethal dose of various drugs *before* arriving back at the Townhouse by men unknown to Defendants, and his killers used Mr. Umberger to gain entry through the Townhouse's locked doors. Defendants had no duty under New York law to install security cameras or to hire a twenty-four-hour security guard, and indeed imposing liability here would open the floodgates for claims by millions of New Yorkers who live without these security features. Even, assuming

*arguendo*, Defendants had any such duty, the absence of these features did *not* proximately cause Mr. Umberger's death, and would not have even necessarily prevented access, which the Amended Complaint concedes Mr. Umberger provided.  What's more, such measures would have done nothing to prevent criminals from harming Mr. Umberger off-premises, as they had already done by the time Mr. Umberger arrived at the Townhouse.  At best, if the Murderers had not been able to gain access to the Townhouse, Mr. Umberger would have been left to die elsewhere.

Second, Plaintiff's negligent infliction of emotional distress ("NIED") claim is even less tenable.  Plaintiff fails to allege, as required under New York law, that Defendants' actions in cooperating with the NYPD in its investigation, returning Mr. Umberger's personal effects, or filing a claim with their insurance company put Plaintiff at any risk of harm or were "outrageous in character" or "so extreme in degree, as to go beyond all possible bounds of decency."  On the contrary, Defendants conducted a reasonable and diligent investigation of Mr. Umberger's murder and cooperated with the criminal authorities every step of the way.  All Plaintiff alleges is that Defendants did not act carefully enough in delivering Mr. Umberger's possessions to Ms. Clary – even accepting those allegations as true—this is plainly insufficient to sustain a NIED claim under New York law.

Third, as to Plaintiff's tortious interference claim, Plaintiff fails to even satisfy the threshold requirement that she or Mr. Umberger were parties to the contract at issue.  In fact, as Plaintiff admits, it is Defendants who are party to the insurance policies referenced in the Amended Complaint.  This fact alone bars any tortious interference claim against Defendants as a matter of law.  Under New York law, tortious interference claims simply cannot be brought by a plaintiff who is not a party to the contract that was allegedly interfered with.  Nor has Plaintiff alleged any interference by Defendants.  To the contrary, as Plaintiff concedes, Defendants submitted claims

on her behalf.  The insurance companies determined that Mr. Umberger's death was not covered under the policies.  Plaintiff's own allegations detailing that Defendants' insurers denied the insurance claims conclusively refute Plaintiff's tortious interference claims and warrant dismissal.

Finally, Plaintiff's new defamation claim violates New York's Civil Rights law prohibiting strategic lawsuits against public participation ("SLAPP").  Statements by Defendants' undersigned counsel that "[t]he complaint's allegations against our client are demonstrably untrue" were expressions of opinion that do not mention Plaintiff, and were made in good faith to defend against Plaintiff's untenable claims and in the exercise of Defendants' First Amendment rights.  Even if New York's anti-SLAPP laws did not apply, Plaintiff fails to state a claim for defamation.  None of the statements Plaintiffs allege were even made by Defendants themselves, let alone constitute an actionable false statement under New York law, which has long held that public statements disputing the accuracy of allegations in a complaint are quintessential nonactionable opinions.

Assuming all facts in the Amended Complaint to be true, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to plead any of her claims as a matter of law.  As such, Defendants move to dismiss the Amended Complaint in its entirety as to all Defendants.  Because Plaintiff has exhausted her sole opportunity to amend her Complaint pursuant to this Court's order (Dkt. No. 11), the Amended Complaint should be dismissed with prejudice.

The Amended Complaint also contains immaterial and irrelevant allegations levied against Defendants.  These harassing allegations do not relate in any way to Plaintiff's claims and are unnecessarily inflammatory.  To the extent the Court declines to dismiss any of the claims against Defendants, Defendants respectfully request that the inflammatory allegations, detailed below, be struck from the Amended Complaint.

## FACTUAL BACKGROUND

John Umberger was an employee of Defendant ACLJ, a non-profit.  Am. Compl. ¶¶ 15-

16.  He was hired on February 10, 2022 as the Director of Diplomacy and Political Programs.  *Id*. ¶ 15.  On or about May 26, 2022, Mr. Umberger went to New York City, where he stayed at the Townhouse in Lenox Hill on East 61st Street that had been acquired by Defendants just two months earlier.  *Id*. ¶¶ 20, 23.  Plaintiff alleges that the purpose of the trip was to enhance the ACLJ's presence in New York City and to work on enhancing the Townhouse's security, housing and meeting facilities.  *Id*. ¶ 23.  Mr. Umberger arrived on Thursday and planned to extend his stay at the Townhouse through the upcoming Memorial Day weekend.  *Id*. ¶ 27.

On Friday night, May 27, 2022 after the work week had ended, Mr. Umberger went out to a bar with friends.  *Id*. ¶ 28.  In the early hours of May 28, 2022, he found himself at a bar called The Q, located at 48th Street and 8th Avenue.  *Id*. ¶ 29.  While there, two men incapacitated him with a deadly combination of the date-rape drug lidocaine and with fentanyl-laced cocaine.  *Id*.  Mr. Umberger was then led back to the Townhouse, where the two men used him to gain entry through the locked doors of the property.  *Id*. ¶¶ 29-30.  The men robbed Mr. Umberger and left him incapacitated in the Townhouse, where he died of an overdose as a result of the drugs he had ingested.  *Id*. ¶ 32.

Having not heard from Mr. Umberger, Plaintiff, Mr. Umberger's mother, contacted Defendant Jordan Sekulow on June 1, 2022.  *Id*. ¶ 34.  Jordan Sekulow indicated that he had not heard from Mr. Umberger since Friday, and dispatched the property manager to the Townhouse.  *Id*.  Jordan Sekulow called Plaintiff to inform her that Mr. Umberger's body had been found in the Townhouse.  *Id*. ¶ 37.  Plaintiff also received a call from the NYPD informing her of Mr. Umberger's death.  *Id*. ¶ 40.  The NYPD investigated Mr. Umberger's murder, and both Plaintiff and Defendant each retained investigators to assist and conduct their own investigations.

The proceeds of the life insurance policy that Defendants had maintained on Mr.

Umberger's behalf were paid to Plaintiff, as was his final paycheck. *Id.* ¶¶ 66-67. Plaintiff alleges on information and belief that Defendants maintain general liability insurance policies that Plaintiff maintains could have provided coverage to her or Mr. Umberger's estate. *Id.* ¶ 68. However, Plaintiff concedes that Defendants submitted a claim on Mr. Umberger's behalf and she received correspondence from the relevant insurers disclaiming that any coverage applied or that Plaintiff or the estate were entitled to any compensation whatsoever. *Id.* ¶¶ 72, 77-80. The insurers each provided several independent justifications for denying coverage, including that the policies do not cover claims for bodily injury or death, and explicitly exclude coverage for any injury to an employee of the insured. *Id.*

Plaintiff filed the initial Complaint on May 28, 2025 in the New York Supreme Court, New York County, asserting claims for negligence, negligent infliction of emotional distress, and tortious interference with contract. On June 27, 2025, Defendants removed the case to the District Court for the Southern District of New York. Dkt. No. 1. Pursuant to Section 4.A.i of this Court's Individual Rules of Practice, on July 7, 2025, Defendants filed a pre-motion letter requesting leave to move to dismiss, Dkt. No. 7, to which Plaintiff responded on July 10, 2025. Dkt. No. 9. On July 31, 2025, this Court granted Defendants leave to file this motion and permitted Plaintiff to amend her Complaint, stating "this will be her last opportunity to amend her pleading[.]" Dkt. No. 11. On August 28, 2025, Plaintiff filed her Amended Complaint.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is only plausible when the facts pled allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint is properly dismissed where, as a matter of

law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. On a motion to dismiss under Rule 12(b)(6), a court "need not accept conclusory allegations or legal conclusions couched as factual [] allegations." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (quotations omitted).

## ARGUMENT

## I.    PLAINTIFF FAILS TO STATE A CLAIM OF NEGLIGENCE.

Under New York law, "a plaintiff must establish three elements to prevail on a negligence claim: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff *as a result thereof*.'" *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 367 (S.D.N.Y. 2008), *aff'd,* 337 F. App'x 7 (2d Cir. 2009) (emphasis added); *see also Solomon v. City of New York*, 66 N.Y.2d 1026 (Ct. App.1985).

The Amended Complaint fails to allege that any Defendant owed a duty to Mr. Umberger beyond the duty of reasonable care, and further fails to allege any act or omission that breached that duty. Am. Compl. ¶ 90. Crucially, no security measures Defendants could have taken would have prevented these two criminals from killing Mr. Umberger. The Amended Complaint specifically alleges that Mr. Umberger was dosed with lidocaine and fentanyl-laced cocaine *before* returning to the Townhouse—either in or outside of the bar he was visiting. *Id*. ¶ 1 ("John was drugged and taken back to" the Townhouse), ¶ 29 (Mr. Umberger was drugged "[i]n or outside" the bar). Even if Defendants had implemented all security measures mentioned in the Amended Complaint—hiring security personnel for the Townhouse and installing security cameras—those measures would have done nothing to prevent the harm that had already befallen Mr. Umberger off the property.

### A. Plaintiff Concedes That Defendants Owed Mr. Umberger Only A Duty Of Reasonable Care.

Plaintiff's Amended Complaint explicitly pleads that Defendants owed Mr. Umberger only the ordinary duty of reasonable care.  Am. Compl. ¶ 90 ("Defendants had a duty of care to act reasonably with respect to the welfare, safety and well-being of John.").  Nor could any heightened duty apply in this case.  Under the common law, an employer owes a duty only "to use reasonable care in furnishing his employees with a safe place to work."  *Olinski v. New York Cent R Co*, 162 F. Supp. 23, 27 (W.D.N.Y. 1956).  Plaintiff's allegation that Defendants "required" Mr. Umberger to stay in the Townhouse during his trip does not change that standard.  Am. Compl. ¶ 25.  As owners of the property, Defendants owed Mr. Umberger, as an invitee, a duty "to use due care under all the circumstances to keep the premises in a *reasonably safe condition*, so as not to unreasonably expose [Mr. Umberger] to danger."  *Brunengraber v. Firestone Tire & Rubber Co.*, 214 F. Supp. 420, 424 (S.D.N.Y. 1963) (emphasis added).  As set forth below, Defendants met this standard as a matter of law.

### B. Plaintiff Concedes Defendants Fully Complied With The Duty of Reasonable Care And Were Not Negligent In Securing the Townhouse.

Plaintiff does not allege any action or omission by any Defendant that breached the duty of reasonable care owed to Mr. Umberger.  While the Amended Complaint alleges that "the Townhouse had not yet been outfitted with proper security measures – or any security measures, for that matter,"  (Am. Compl. ¶ 25), this allegation is directly contradicted by the allegation that there were "basic locks on the doors,"  Am. Compl. ¶ 30.

It is black-letter New York law that landowners do not have a duty to provide security measures beyond working locks on external doors.  *Scurry v. New York City Hous. Auth.*, 39 N.Y.3d 443, 452 (2023) (landowners only have a duty to provide "the most rudimentary security— e.g., locks for the entrances" of their buildings); *Batista v. City of New York*, 108 A.D.3d 484, 487

(2013) (building owners not liable for criminal acts of third parties "absent a failure to provide 'even the most rudimentary security' of an entry door lock."); *Tarter v. Schildkraut*, 151 A.D.2d 414, 415 (1989) ("one locked door was sufficient to discharge defendants' duty to the plaintiff."); *Novikova v. Greenbriar Owners Corp.*, 258 A.D.2d 149, 155 (2d Dep't 1999) (building owner does not have a duty to provide a 24-hour security guard); *Florman v. City of New York*, 293 A.D.2d 120, 124 (1st Dep't 2002) (landowner "is not an insurer of the safety of those who use his premises" and "while a landowner must provide reasonable security measures, it need not provide optimal [or] the most advanced security system available.") (internal citations omitted).

Plaintiff admits that the Townhouse was equipped with working locks. This admission itself defeats Plaintiff's negligence claim, without regard to the balance of Plaintiff's allegations. Plaintiff's contention that Defendants did not provide additional security, such as 24-hour security guards, or 24/7 monitored security cameras, *see* Am. Compl. ¶ 30, has no bearing on this case because New York law imposes no duty to provide such additional security measures. Indeed, to sustain Plaintiff's negligence claim would be to rule that every property owner in New York City is per-se negligent if they do not hire 24-hour security guards or install 24-hour monitored security cameras. New York courts have repeatedly declined to impose such liability on landlords for damages caused by third-party criminals, and this Court should reach the same conclusion.

### C. No Alleged Act Or Omission Of Defendants' Proximately Caused Mr. Umberger's Death.

Even if there was some heightened duty—which there is not—the allegations in the Amended Complaint do not support the inference that any lack of security at the Townhouse or any other action or omission by Defendants proximately caused Mr. Umberger's death—in fact, Plaintiff's own allegations refute any such inference. There is simply no logical, let alone causal, link between the alleged lack of security measures at the Townhouse and the off-site and

unforeseeable criminal activity that resulted in Mr. Umberger's death.  "With respect to proximate cause, it is the plaintiff's burden to show that the defendant's conduct 'was a substantial causative factor in the sequence of events that led to [the] injury.'" *Schaeffer v. Vera Wang Bridal House, Ltd.,* 64 F. Supp. 2d 286, 293 (S.D.N.Y. 1999).  Where a "complaint does not allege sufficient [facts] to show that plaintiffs' injuries were proximately caused by any act or omission on defendant's part in maintaining security in the building," it "fails to state a cause of action." *Harris v. New York City Hous. Auth.*, 187 A.D.2d 362, 362 (1992).

The Amended Complaint specifically alleges multiple times that Mr. Umberger was drugged *before* he was taken back to the Townhouse.  Am. Compl. ¶ 1 ("John was drugged and taken back to" the Townhouse); ¶ 29 (Mr. Umberger was drugged "[i]n or outside" the bar, then led back to the Townhouse).  The absence of security cameras or a guard at the Townhouse did not *cause* Mr. Umberger to be targeted and harmed by criminals.  Moreover, the addition of extra security measures would have been immaterial because as the Amended Complaint concedes, Plaintiff voluntarily provided access to the Murderers to enter the Townhouse.  *Id*. ¶ 30 ("the perpetrators easily were able to gain entry with John in his incapacitated state.").  Thus, even if Defendants had implemented the additional security measures suggested in the Amended Complaint, those measures would have done nothing to prevent the access or harm that Mr. Umberger suffered.  At best, the Murderers would not have been able to enter the Townhouse, and Mr. Umberger would have died elsewhere.

Even if there were some causal connection between Defendants' conduct and Mr. Umberger's injury, Mr. Umberger's fatal drugging by third-party criminals he met at a bar elsewhere in New York City was not a reasonably foreseeable consequence of any act or omission by Defendants.  Foreseeability of injury is a threshold requirement of proximate cause.  New York

courts have consistently held that a defendant can only be held liable for negligence where intervening criminal activity is a "normal and foreseeable consequence of defendant's conduct." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 571 (S.D.N.Y. 2010) (dismissing negligence claim against bar owner for alleged failure to provide security capable of preventing patron's death during a bar fight); *Tarter v. Schildkraut*, 151 A.D.2d at 416 (plaintiff failed to state prima facie negligence claim where targeted attack of tenant in building was "truly extraordinary and unforeseeable and served to 'break the causal connection' between any negligence on the part of the defendants and the plaintiff's injuries."); *Harris v. New York City Hous. Auth.*, 187 A.D.2d at 362 (dismissing complaint where third-party attack was not foreseeable, therefore lack of building security was not proximate cause of injury).

While foreseeability may be a factual issue, to survive a motion to dismiss plaintiff must allege sufficient facts to *plausibly* show that injury was foreseeable. *Iqbal*, 556 U.S. at 678. Plaintiff fails to do so here. Defendants could not have plausibly foreseen that Mr. Umberger would be fatally drugged by two criminals while off the premises, nor that those criminals would use Mr. Umberger to gain access to the locked Townhouse and leave him there to die and Plaintiff alleges no prior pattern of criminal access to the Townhouse or other facts to establish foreseeability here.

## II.   PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

Under New York law, a plaintiff alleging NIED must plead that there was (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress. *Truman v. Brown*, 434 F. Supp. 3d 100, 122 (S.D.N.Y. 2020). "[T]he parameters of this tort are extremely narrow." *Campoverde v. Sony Pictures Ent.*, 2002 WL 31163804, at *13 (S.D.N.Y. Sept. 30, 2002). The plaintiff must establish that the conduct was "so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. Plaintiff's NIED claim fails to meet this high bar.

### A. The Complaint Fails To Allege Any "Extreme And Outrageous" Conduct On The Part Of Any Defendant.

Plaintiff fails to allege any conduct on the part of any Defendant that could reasonably considered "extreme," or "atrocious." *See Truman v. Brown*, 434 F. Supp. 3d 122. Her allegations of "wanton and reckless" conduct are limited to conclusory and unsupported claims that Defendants: 1) discovered and allegedly concealed Mr. Umberger's death, 2) represented to Plaintiff and unidentified third parties their early understanding that Mr. Umberger's death was the result of a self-inflicted overdose, 3) shipped Mr. Umberger's belongings to Plaintiff in a manner that caused certain items to be damaged in transit, 4) failed to cooperate with the investigation into Mr. Umberger's death, and 5) failed to provide Plaintiff with information regarding Defendants' insurance policies. Am. Compl. ¶ 98. These allegations cannot support an NIED claim. Indeed, New York courts have readily dismissed NIED claims based on more compelling fact patterns. *See, e.g.*, *Kmiotek v. Sachem Cent. Sch. Dist.*, 176 A.D.3d 1063, 1065 (2019) (finding NIED claims "patently meritless" where plaintiff students witnessed death of a classmate and were denied counseling by their school); *Campoverde*, 2002 WL 31163804, at *14 (dismissing NIED claim alleging defendants "abused and harassed" plaintiffs); *Carney v. Bos. Mkt.*, 2018 WL 6698444, at *4 (S.D.N.Y. Dec. 20, 2018) (NIED claim dismissed as insufficiently extreme where plaintiff alleged she was served meal containing baby bird's head.).

### B. Plaintiff's Allegations Fail To Satisfy Any Of The Three Narrow Theories Required To Bring An NIED Claim.

Even if Defendants' alleged conduct could be considered extreme or outrageous, Plaintiff still fails to plead any cognizable theory supporting her NIED claim. Under New York law, a

plaintiff must plead, in addition to the elements, facts making out one of the three theories: (1) bystander theory, (2) a direct duty theory, or (3) a special circumstances theory. *Truman v. Brown*, 434 F. Supp. 3d at 122-23. *See also Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000). Under both 1) the bystander theory and 2) the direct duty theory, the plaintiff must allege that she was in imminent physical danger, and that her own safety was threatened. *See Baker v. Dorfman*, 239 F.3d at 421 (to satisfy bystander theory based on death of an immediate family member, plaintiff must be physically present at the time of injury or death and must witness it contemporaneously); *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) (direct duty applies where plaintiff "suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety."); *Gaylord v. Fiorilla*, 28 A.D.3d 713, 714 (2006) (claim for negligent infliction of emotional distress could not be premised upon conduct that caused only emotional injuries). The Amended Complaint is devoid of any allegation that Plaintiff's safety was ever threatened. Thus, she cannot bring an NIED claim under either of these two theories.

The third and only remaining theory, the special circumstances test, is applied only in extremely limited cases "where there is 'an especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious.'" *Baker v. Dorfman*, 239 F.3d at 421 (internal punctuation omitted). This test has been applied rarely and to extreme sets of facts not comparable to those alleged here, including 1) a patient receiving a bone graft from infected corpses that defendant had represented were sterile, *Keller v. Medtronic Sofamor Danek, USA, Inc.*, 2009 WL 1106266 (N.Y. Sup. Ct. Apr. 14, 2009); 2) a hospital negligently informing plaintiff that her parent had died when they had not, *see Johnson v. State*, 37 N.Y.2d 378, 383 (1975); 3) negligent misdiagnosis of HIV, *Baker*, 239 F.3d

at 422; and 4) the mishandling of a loved one's remains resulting in cremation, *see Lando v. State of New York*, 39 N.Y.2d 803, 804–05 (1976); *Jones v. City of New York*, 80 A.D.3d 516 (1st Dep't 2011).

Plaintiff's claim does not fall into any of the specific categories included in the special circumstances test, which courts have applied in only limited circumstances not present here.

## III.    PLAINTIFF FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT.

A claim for "tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996). Plaintiff's allegations fail to meet a single one of the elements of a tortious interference claim.

Plaintiff claims Defendants tortiously interfered with several insurance policies maintained by CASE and ACLJ as insureds, including a General Liability Insurance Policy and a Commercial Excess & Umbrella Insurance Policy with insurers Vigilant Insurance Company and Federal Insurance Company (together, "Chubb"). Am. Compl. ¶ 68. The Amended Complaint references a September 14, 2022 letter Plaintiff received from Chubb, describing its reasoning for denying Plaintiff's claim. Am. Compl. ¶ 72. Plaintiff further references policies from Employers Preferred Insurance Company and Munich Re, who have also provided Plaintiff with claim denial letters stating their many reasons for denying coverage related to this action. Am. Compl. ¶¶ 77-80.

First, Plaintiff and Mr. Umberger were not parties to, or intended beneficiaries of, the insurance policies, and thus lack standing to bring a tortious interference claim in the first place. Second, it is blackletter law that a tortious interference claim cannot be brought against a party to

the contract.  Defendants, as the insureds, were clearly parties to the policies.  Third, Plaintiff does not plead any interference with the insurance policies; to the contrary, the Amended Complaint alleges that Defendants submitted claims on Plaintiff's behalf and the insurers denied the claims.

### A.  Plaintiff Lacks Standing To Assert The Tortious Interference Claim.

Plaintiff's allegations fail to meet a threshold requirement of a tortious interference claim— that the Plaintiff be a party to, or intended beneficiary of, the contract.  *See Lama Holding Co.*, 88 N.Y.2d at 424 ("Tortious interference with contract requires the existence of a valid contract between the *plaintiff* and a third party.") (emphasis added); *Wells Fargo Bank Nw., N.A. v. Energy Ammonia Transp. Corp.*, 2002 WL 1343757, at *1 (S.D.N.Y. June 18, 2002) (because claimants "are neither parties to, nor third-party beneficiaries of, the [contract], they lack standing to bring a claim for tortious interference with that contract and their purported claim to that effect must likewise be dismissed.").  Neither Plaintiff nor Mr. Umberger were parties to the general liability insurance policies maintained by Defendants.  The Amended Complaint does not dispute this key fact.

Nor were Plaintiff or Mr. Umberger intended beneficiaries of the policies.  In fact, as explained below, coverage for the claims was precluded under exclusions applying to claims by employees of CASE, like Mr. Umberger.  *See* Am. Compl. ¶ 78 ("the exclusive remedy of Plaintiffs is workers compensation"); ¶ 72 ("To the extent John suffered 'bodily injury' as defined in the Policies, Chubb asserted that there were exclusions to coverage"); ¶ 80 ("the policy does not cover 'bodily injury, mental anguish, or death of any person'").  Because Mr. Umberger was explicitly excluded from coverage, there can also be no plausible allegation that Plaintiff or Mr. Umberger were intended beneficiaries of the insurance policies.  *See McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771, 773 (2d Cir. 1992) ("A third-party beneficiary exists, however, only if the parties to that contract intended to confer a benefit on him when contracting; it is not enough that

some benefit incidental to the performance of the contract may accrue to him.") (internal quotations omitted).  Thus, this Court should dismiss Plaintiff's tortious interference claim because Plaintiff lacks standing to bring this case.  *See Lama Holding Co.*, 88 N.Y.2d at 424.

### B.  Plaintiff's Tortious Interference Claim Fails As A Matter Of Law Because Defendants Were Parties To The Insurance Policy.

While Plaintiff's lack of standing is dispositive of the tortious interference claim, this claim must also be dismissed on the grounds that "a plaintiff who brings a tortious interference claim must allege that the defendants were *not parties to the contract*."  *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996) (emphasis in original) (only a "stranger to the contract" may be liable for tortious interference).  This requirement is fatal to Plaintiff's claim.  As named insureds under the policies, there can be no dispute that CASE and ACLJ were parties to the contracts.  The illogical and implausible allegation in the Amended Complaint that Defendants were somehow not parties to their own insurance policies should be ignored as absurd.  Am. Compl. ¶ 108.

Nor can Defendants Jordan Sekulow, Jay Sekulow, or 34 LLC be considered "strangers" to the contract.  Under New York law, corporate insiders or individuals who control the affairs of the company cannot be considered third parties to the contract, absent a showing that they acted outside the scope of their authority.  *See Solow v. Stone*, 163 F.3d 151, 152 (2d Cir. 1998); *Finley*, 79 F.3d at 1295.  The Amended Complaint alleges correctly that at all relevant times, Jay Sekulow served as President and CEO of both the ACLJ and CASE, and Jordan Sekulow served as Executive Director of the ACLJ.  Compl. ¶¶ 10-11.  There is no allegation in the Amended Complaint that either individual acted outside the scope of his authority, let alone with respect to the insurance policy or any claim made under it.

Indeed, the Amended Complaint fails to allege *any* act of inducement by *any* particular Defendant.  Instead, Plaintiff merely alleges that "[t]o the extent Plaintiff's rights under that

contract were interfered with by Defendants CASE, 34 LLC, Jay Sekulow and/or Jordan Sekulow, those Defendants, who were not parties to the Employers policy, would be liable for tortious interference.  Am. Compl. ¶ 108.  This allegation is speculative, conclusory, vague, suffers from impermissible group pleading, and is wholly unsupported by fact.  *See Carlyle, LLC v. Quik Park 1633 Garage LLC*, 160 A.D.3d 476, 477 (2018) (dismissing tortious interference claim as vague and speculative).  These flaws also mandate dismissal.

### C.  Plaintiff Fails To Allege Any Breach Of The Contract Or Resulting Injury.

Even if Plaintiff had standing to assert a tortious interference claim against a party to the contract—which she does not—Plaintiff's tortious interference claim fails because it is refuted by explicit allegations in the Amended Complaint itself.  Indeed, Plaintiff's own allegations establish that far from interfering with the insurance policies, Defendants submitted the claims on their general liability insurance at Plaintiff's request, and that it was the insurers, not Defendants, that denied the claims on the basis that they were not covered by the policies and were further subject to explicit exclusions of coverage.  *See* Am. Compl. ¶ 69 ("Defendants reported to Linda, through her representatives, that they submitted claims on these policies"); ¶¶ 72, 77, 79 (admitting Plaintiff received letters from the insurance companies, not Defendants, denying coverage for several independent reasons).  It is these allegations that the Court should credit, over Plaintiff's conclusory statements that Defendants interfered with her insurance claims.

According to Plaintiff, each insurance company stated several independent bases for denying Plaintiff's claims.  For example, Chubb determined that no coverage existed because "John's death did not constitute 'property damage caused by an occurrence or advertising injury or personal injury' as defined in the Policies," and that there were further exclusions to coverage to the extent he suffered bodily injury as defined in the Policies.  Am. Compl. ¶ 72.  Employers denied coverage based on four independent bases, according to Plaintiff, including that "its policy

17

does not cover bodily injury". *Id*. ¶ 78. Munich Re denied coverage on *six* independent bases, including that "the policy does not cover 'bodily injury, mental anguish, or death of any person.'" *Id*. ¶ 80.

Plaintiff thus alleges no interference or breach of any provision of the contract by any Defendant. *See Romanello v. Intesa Sanpaolo S.p.A.*, 97 A.D.3d 449, *aff'd as modified*, 22 N.Y.3d 881 (2013) ("[I]n the absence of an actual breach of a contract, no claim will lie against a third party [] for tortious interference with that contract"); *Automatic Findings, Inc. v. Miller*, 232 A.D.2d 245 (1996) (similar).

For all these reasons, Plaintiff's tortious interference claim should be dismissed.

## IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION.

### A.  Plaintiff's Defamation Claim Is Barred By New York's Anti-SLAPP Law.

In her Amended Complaint, Plaintiff brings a brand new and outrageous claim of defamation, seeking to punish Defendants merely for exercising their First Amendment rights and defending themselves against this frivolous suit. Plaintiff's defamation claim is a blatant violation of New York's anti-SLAPP statute and should be dismissed with fees and costs awarded to Defendants. N.Y. Civ. Rights Law § 70-a (defendant in a SLAPP action may "recover damages, including costs and attorney's fees, from any person who commenced or continued such action" where the action "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law."); *see Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 189 (S.D.N.Y. 2024) (defendant entitled to attorney's fees where plaintiff commenced claim in violation of anti-SLAPP law and failed to state a claim). Defendants are also entitled to recover compensatory and punitive damages here, where the claim was asserted "for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech." *Id*.

New York's anti-SLAPP statute prevents a plaintiff from maintaining any "claim based upon: (1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition"  N.Y. Civ. Rights Law § 76-a.

Both standards apply in this case and render Plaintiff's claim improper.   First, the statements at issue were made to the media in response to a matter of public interest—namely, Plaintiff's already publicly filed Complaint.  *See Bobulinski v. Tarlov*, 758 F. Supp. 3d at 178 (New York courts "construe an issue of public interest 'broadly,' meaning 'any subject other than a purely private matter.'").  As statements to the press, they were also clearly made in a public forum.

Moreover, the statements also constituted the exercise of Defendants' First Amendment rights of free speech to defend themselves in connection with this public proceeding.  Plaintiff's claims are based on statements of Defendants' undersigned counsel, who responded to requests for comment from various news outlets following the filing of Plaintiff's Complaint.  Specifically, these requests for comment focused on Plaintiff's wild and unsupported accusations that Defendants conspired to cover up Mr. Umberger's murder.  *See* Am. Compl. ¶ 114.  Defendants' counsel had no choice but to refute Plaintiff's horrific and false allegations that were already being spread in the public forum, as these proceedings are public.  And counsel's statements refuting these claims were plainly reasonable: "The complaint's allegations against our client are demonstrably untrue, which will become clear as the case proceeds."

Where, as here, a defendant establishes that the statement at issue concerns a matter of public interest, "[t]he burden now shifts to plaintiff[] to demonstrate that the claims have a 'substantial basis.'"  *Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10, 20 (1st Dep't 2024).

"[A] complaint which fails to state a claim [for relief] necessarily lacks a 'substantial basis in law.'" *Id*. at 24 (dismissing defamation claim as a violation of anti-SLAPP law and awarding defendant costs and fees).  For the reasons stated below, Plaintiff falls far short of meeting its burden.

### B.  Plaintiff Fails To Allege Any Actionable Defamatory Statements.

"To establish a claim for defamation under New York law, a plaintiff must prove that: (1) the defendant published a defamatory statement of fact to a third party, (2) the statement of fact was false, (3) the false statement of fact was made with the applicable level of fault, and (4) either the false statement was defamatory per se or caused the plaintiff special harm." *Kamdem-Ouaffo v. Balchem Corp.*, 2018 WL 4386092, at *19 (S.D.N.Y. Sept. 14, 2018).  Plaintiff has not done so here.

The challenged statements (both nearly identical) were made by Defendants' counsel following the filing of Plaintiff's initial Complaint.  Counsel stated, "[t]he complaint's allegations against our client are demonstrably untrue, which will become clear as the case proceeds."  Am. Compl. ¶ 114.  First, the statements are not actionable against Defendants because they were not made by Defendants, but by Defendants' attorneys.  This is dispositive of Plaintiff's defamation claim.  *See Sprecher v Thibodeau,* 148 A.D.3d 654, 65 (1st Dep't 2017) (holding claim should have been dismissed "insofar as it was premised on comments made by defendant's attorney" rather than the party's own statements).

In any event, counsel's statements are not actionable false statements, but quintessential opinions that are exempted from defamation claims and protected by constitutional free speech rights.  *See Sprecher v Thibodeau,* 148 A.D.3d at 656 ("comments made to the media by a party's attorney regarding an ongoing lawsuit constitute nonactionable opinions"); *see also Brian v. Richardson*, 87 N.Y.2d 46, 53 (1995) (affirming dismissal of defamation claim where "defendant

disclosed that he had been [acting as an] attorney, thereby signaling that he was not a disinterested observer"); *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 244 (1991); *Shawe v. Kramer Levin Naftalis & Frankel LLP*, 2018 WL 984833, at *9 (N.Y. Sup. Ct. Feb. 16, 2018) ("Likewise, predictions concerning the outcome of unknown future events . . . are, by their nature, incapable of categorization as either true or false" and thus non-actionable). Indeed, courts have dismissed defamation claims based on far more inflammatory statements than counsel's remarks on the Complaint here. For example, the New York Court of Appeals ruled that a defendant's statement that the plaintiff's lease agreement was "as fraudulent as you can get and it smells of bribery and corruption" would not be interpreted by a reasonable listener as a statement of fact, but one of opinion. *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 143 (1992). In dismissing plaintiff's defamation claim, the Court further noted that the challenged statement about the plaintiff's lease agreement was "devoid of reference to the plaintiff." *Id*. So too here, where counsel referred only to the Complaint and did not reference Plaintiff herself.

Moreover, Plaintiff also fails to plead the applicable level of fault. Because counsel's statement was made about "an issue of public interest," thereby implicating New York's "anti-strategic litigation against public participation" (anti-SLAPP) law, the applicable standard of fault is actual malice. *Bobulinski v. Tarlov*, 758 F. Supp. 3d at 177–78; *Kesner v. Dow Jones & Co., Inc.*, 2023 WL 4072929, at *2 (2d Cir. June 20, 2023). Counsel's statements that the allegations in the Complaint were untrue were not made with knowledge of their falsity, nor does Plaintiff even attempt to allege this was the case as required to maintain her claim. In fact, Plaintiff conveniently omits counsel's other statement reported in the article, that "[t]he murder of John Umberger was a tragic and a huge loss of a very talented and good young man who ACLJ was

honored to have as a colleague."[1]

Finally, Plaintiff alleges neither special damages nor defamation per se, as required to plead a defamation claim.  Plaintiff asserts no special damages whatsoever in the Amended Complaint.  Am. Compl. ¶¶ 113-23.  The doctrine of defamation per se is inapplicable here, as it is applied only in cases falling into limited categories.  "The four categories of statements that have historically constituted slander per se in New York are those that (i) charge the plaintiff with a serious crime; (ii) tend to injure the plaintiff in his or her trade, business or profession; (iii) imply that the plaintiff has a loathsome disease; or (iv) impute unchastity to a woman."  *Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001).  None of these apply here.

## V.    IN THE ALTERNATIVE, THIS COURT SHOULD STRIKE CERTAIN ALLEGATIONS IN THE AMENDED COMPLAINT.

The Court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Federal Rules of Civil Procedure 12(f).  On a motion to strike, "defendants must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant."  *Impulsive Music v. Pomodoro Grill, Inc.*, 2008 WL 4998474, at *2 (W.D.N.Y. Nov. 19, 2008).  Courts have found allegations to be prejudicial when they are "amorphous, unspecific and cannot be defended against" and where the allegations, if publicized, "harm [the defendant] in the public eye and could influence prospective jury members."  *Low v. Robb*, 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012).

---

[1] Rohrlich, Justin and Feinberg, Andrew, *Mom of murdered gay man claims evangelical Trump impeachment lawyer misled cops about son's death: lawsuit*, INDEPENDENT (May 29, 2025), available at: https://www.independent.co.uk/news/world/americas/nyc-murder-john-umberger-lgbtq-lawsuit-trump-lawyer-sekulow-b2760205.html.

Plaintiff's Amended Complaint levies allegations against Defendants that "serve[] no purpose except to inflame the reader," and should thus be struck from the Amended Complaint. *See Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991).   These allegations are speculative, baseless, and completely unsupported by any facts.  Even if true, they would in no way support Plaintiff's actual claims for relief.  *See* Am. Compl. ¶¶ 39, 42, 60, 61, 98.

Plaintiff asserts without any basis in fact that Defendants knew of John's death and terminated his health insurance, only to be reinstated a day later and then cancelled again, leading Plaintiff to draw the unsupported conclusion that Defendants "knew about John's death prior to June 1, 2022, and was misrepresenting the facts intentionally to gain some sort of advantage on behalf of Defendants."  Am. Compl. ¶ 39; *see also* ¶ 42 (such "sequence suggests that Defendants learned of John's death by May 31 and acted to cancel his insurance, only to realize that they should wait until it was 'official.'").  Similarly, Plaintiff asserts that "[t]he circumstances suggest that Defendants 'cleaned up' the Townhouse before allowing John's body to be discovered and before NYPD could search the premises." Am. Compl. ¶ 61; *see also* ¶ 98 ("Discovering and concealing John's death").  These baseless allegations have nothing to do with the claims at hand. Even if they were true, they would not support any element of any of Plaintiff's causes of action. These wholly inaccurate and appalling allegations imply that Defendants were involved in a conspiracy to destroy evidence in a murder investigation, amounting to an attack on Defendants' character.  Courts have held that such character attacks should be struck from complaints where, as here, they "do not assert any facts that can be litigated in this case."  *Low*, 2012 WL 173472, at *10.

## CONCLUSION

For the reasons set forth above, Defendants respectfully submit that the Amended Complaint should be dismissed in its entirety as to all Defendants.  Because Plaintiff has already

exhausted her "last opportunity to amend her pleading" per this Court's July 31, 2025 Order, the Amended Complaint should be dismissed with prejudice.  In the alternative, if this Court should decline to dismiss the Amended Complaint in its entirety, Defendants request that this Court strike certain immaterial, irrelevant, and scandalous allegations from the Amended Complaint as set forth above.  Defendants further request that the Court award Defendants costs and attorney's fees to defend against Plaintiff's meritless defamation claim, which was commenced in violation of New York's anti-SLAPP law.

Dated: September 18, 2025

Respectfully submitted,

**BROWN RUDNICK LLP**

By:  /s/ *Michael J. Bowe*
Michael J. Bowe
Andrew T. Sutton
Kate E. Fisch
7 Times Square
New York, NY 10036
Phone: (212) 209-4800
Fax: (212) 209-4801
Email: mbowe@brownrudnick.com
      atsutton@brownrudnick.com
      kfisch@brownrudnick.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2025, a copy of the foregoing was served via the Court's ECF system on all parties of record.


/s/ *Michael J. Bowe*
Michael J. Bowe