UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA LOUISE CLARY a/k/a LINDA CLARY UMBERGER individually and on behalf of THE ESTATE OF JOHN ANTHONY CLARY UMBERGER (deceased),<br><br>    Plaintiff,<br><br> -  against -<br><br>CHRISTIAN ADVOCATES SERVING EVANGELISM, INC., THE AMERICAN CENTER FOR LAW AND JUSTICE, INC., 34 EAST 61ST STREET, LLC, JAY SEKULOW, and JORDAN SEKULOW,<br><br>    Defendants. | Case No. 1:25-cv-05386-MKV |

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION TO DISMISS AND STRIKE THE AMENDED COMPLAINT**

---

 

**BRITHEM LLP**

Michael J. Bowe
Andrew T. Sutton
Kate E. Fisch
565 Fifth Ave.
New York, NY 10017
Phone: (646) 653-9378
Email: mbowe@brithem.com
       asutton@brithem.com
       kfisch@brithem.com

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ..................................................................................................................................2

I. PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE ...................................2

II. PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ................................................................................................5

III. PLAINTIFF FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT ..........................................................................................................6

IV. PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION .................................9

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*,
  796 F. Supp. 2d 458 (S.D.N.Y. 2011) ..........................................................................10

*Artwear, Inc. v. Hughes*,
  A.D.2d 76 (1994) ..........................................................................................................7

*Ashby v. ALM Media, LLC*,
  110 A.D.3d 459 (1st Dep't 2013) .................................................................................7

*Baker v. Dorfman*,
  239 F.3d 415 (2d Cir. 2000) .........................................................................................6

*Beter v. Baughman*,
  2024 WL 4252036 (S.D.N.Y. Sept. 5, 2024) ...............................................................6

*Bonanni v. Straight Arrow Publishers, Inc.*,
  133 A.D.2d 585 (1987) .............................................................................................7-8

*Burrowes v. Combs*,
  25 A.D.3d 370 (1st Dep't 2006) ...............................................................................8, 9

*Carney v. Boston Market*,
  2018 WL 6698444 (S.D.N.Y. Dec. 20, 2018) .............................................................6

*Casanas v. Casanas*,
  215 A.D.3d 443 (1st Dep't 2023) .................................................................................7

*EVUNP Holdings LLC v. Fryman*,
  2015 N.Y. Misc. LEXIS 3599 (Sup Ct, New York County Sept. 30, 2015) .............10

*Farash v. Cont'l Airlines, Inc.*,
  574 F. Supp. 2d 356 (S.D.N.Y. 2008) .........................................................................2

*Fisher v. PaineWebber Inc.*,
  1994 U.S. Dist. LEXIS 13229 (S.D.N.Y. Sept. 20, 1994) ..........................................4

*Glennon v. Star Co.*,
  130 A.D. 491 (1st Dep't 1909) ....................................................................................3

*Gotbetter v. Dow Jones & Co.*,
  259 A.D.2d 335 (1st Dep't 1999) ...............................................................................10

*Harris v. New York City Hous. Auth.*,
  187 A.D.2d 362 (1992) ................................................................................................5

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011) .........................................................................................6

*La Russo v. St. George's Univ. Sch. of Med.*,
   936 F. Supp. 2d 288 (S.D.N.Y. 2013) ..................................................................................9

*Milan v. Wertheimer*,
   808 F.3d 961 (2d Cir. 2015) .................................................................................................6

*Miller & Wrubel, P.C. v. Todtman, Nachamie, Spizz & Johns, P.C.*,
   106 A.D.3d 446 (2013) ........................................................................................................7

*Newmann v. Mediterranean Shipping Co.*,
   2019 U.S. Dist. LEXIS 169571 (S.D.N.Y. Sept 30, 2019) ...................................................4

*Olinski v. New York Cent. R.R. Co.*,
   162 F. Supp. 23 (W.D.N.Y. 1956) .......................................................................................3

*Palin v. New York Times Co.*,
   940 F.3d 804 (2d Cir. 2019) .................................................................................................3

*Reeves v. Associated Newspapers, Ltd.*,
   232 A.D.3d 10, 19 (1st Dep't 2024) ....................................................................................9

*Romanello v. Intesa Sanpaolo S.p.A.*,
   97 A.D.3d 449 (1st Dep't 2012) ..........................................................................................7

*Scholastic, Inc. v. Stouffer*,
   124 F. Supp. 2d 836 (S.D.N.Y. 2000) ...............................................................................10

*Scurry v. New York City Hous. Auth.*,
   39 N.Y.3d 443 (2023) ..........................................................................................................3

*Washington Ave. Assocs. v. Euclid Equip., Inc.*,
   229 A.D.2d 486 (2d Dep't 1996) .........................................................................................9

*Zervos v. Trump*,
   171 A.D.3d 110 (1st Dep't 2019) ................................................................................. 9-10

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Amended Complaint or, in the alternative, to strike certain immaterial, impertinent, or scandalous allegations (the "Motion").

**PRELIMINARY STATEMENT**

No one disputes that the murder of Mr. Umberger by Jayqwan Hamilton and Robert DeMaio was a horrific tragedy. However, the culprits – Messrs. Hamilton and DeMaio – are in jail for their heinous crime and have been convicted and sentenced for that murder. Plaintiff, Mr. Umberger's mother, is now seeking monetary damages from the Defendants – even though they played no role whatsoever in her son's death. The Amended Complaint does not allege that any Defendant drugged her son or otherwise contributed to his death. It does not even allege that he was drugged or killed on the job, or during working hours. For these reasons, and those set forth in Defendants' opening brief in support of their Motion (Dkt. No. 17, the "Opening Brief") and below, Plaintiff's claims for negligence, negligent infliction of emotional distress, tortious interference with contract, and defamation fail as a matter of black letter New York law and should be dismissed.

Plaintiff's opposition does not address any of these legal deficiencies. It merely argues that "at this stage the Court must accept Plaintiff's allegations as true and draw all reasonable inferences in Plaintiff's favor." (Dkt. No. 18 (the "Opposition") at 1). While Defendants do not dispute that this is the applicable standard on this motion to dismiss, even accepting Plaintiff's allegations as true, the Amended Complaint fails to state claims for each of cause of action. Although Plaintiff alleges that Defendants did not have sufficient security, Plaintiff does not cite a single case that requires New York City homeowners to have security guards or security cameras, nor does she plead how the existence of these additional security measures would have

1

resulted in a different outcome. She likewise fails to allege extreme or outrageous conduct required to maintain a claim for negligent infliction of emotional distress. Moreover, Plaintiff's baseless speculation as to why third parties may have declined insurance coverage does not create an actionable cause of action for tortious interference with contracts to which Defendants and their principals are parties, particularly here where there is no plausible allegation that had Defendant submitted the claim sooner or differently, coverage would have been provided. Finally, Defendants' counsel's opinions concerning the allegations in the original complaint filed in this Action are quintessential, nonactionable opinions.

In short, even accepting all well-pleaded facts in the Amended Complaint as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to adequately plead any of her claims as a matter of law. Accordingly, Defendants' Motion should be granted, and the Amended Complaint should be dismissed in its entirety.

## ARGUMENT

**I.     PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE**

As explained in Defendants' Opening Brief, the Amended Complaint fails to adequately allege that Defendants breached any duty owed to the Plaintiff or that any act (or failure to act) by the Defendants caused Mr. Umberger's death. (Opening Brief at 8-11).

Plaintiff's opposition fails to substantively address the litany of cases cited in the Opening Brief holding that Defendants had no duty to add any security to the Townhouse, located on 61st Street between Madison and Park Avenue, beyond standard door locks.[1] (Opening Br. at 8-9). It merely argues that the cases Defendants relied on are "factually

---

[1] Plaintiff's Amended Complaint concedes that the Townhouse had "locks on the doors." (Am. Compl. ¶ 30).

2

dissimilar" as they were "brought by tenants or guests." (Opposition at 11). But Plaintiff fails to explain *why* that purported distinction matters. To wit, landlords and employers have similar duties to protect their tenants and employees, respectively, from harm. *See, e.g.*, *Scurry v. New York City Hous. Auth.*, 39 N.Y.3d 443, 452 (2023) (holding that landlords have the duty to "protect tenants from foreseeable harm"); *Olinski v. New York Cent. R.R. Co.*, 162 F. Supp. 23, 27 (W.D.N.Y. 1956) (holding that employers have the duty "to use reasonable care in furnishing his employees with a safe place to work"). In fact, Plaintiff's Opposition cites *Glennon v. Star Co.*, 130 A.D. 491, 494 (1st Dep't 1909) for this very proposition: "'[An] employer is charged with the positive duty of furnishing to his employes a safe and proper place in which they are to do the work required of them.'" (Opposition at 11 (quoting *Glennon*, 130 A.D. at 494)). Plaintiff fails to cite a single case in which anyone – whether an employer or a landlord – was found to have violated her duty of care by failing to provide a security guard or monitoring system, as Plaintiff suggests Defendants were required to have done here. (Am. Compl. ¶ 94). This is not surprising, as to hold otherwise "would open the floodgates for claims by millions of New Yorkers who live without these security features." (Opening Brief at 2).

    Even assuming *arguendo* that Defendants breached their duty of reasonable care by failing to provide a security guard or monitoring system in the Townhouse (they did not), Plaintiff's contention that this failure was the proximate cause of Mr. Umberger's death (Opposition at 10) likewise fails as a matter of law. As Plaintiff concedes, Mr. Umberger died as a result of being drugged in or outside of "a nightclub called The Q NYC, located at 795 Eighth Avenue[.]" (Am Compl. ¶ 29). Plaintiff does not allege that any Defendants were involved in Mr. Umberger's drugging, were there that evening, or that he was drugged at the place of his employment, or in connection with any employment related role. To the contrary, the Amended

3

Complaint admits that Mr. Umberger was drugged while out with friends, on the weekend, after the work week and his work-related responsibilities concluded. (Am. Compl. ¶ 28.)

Moreover, the allegations in the Amended Complaint do not support a reasonable inference that any lack of security at the Townhouse or any other action or omission by Defendants proximately caused Mr. Umberger's death. Again, the Amended Complaint concedes Mr. Umberger provided his murderers with access to the Townhouse. (Am. Compl. ¶ 30.) Thus, even accepting Plaintiff's allegations as true, even if the Townhouse did have 24-hour security personnel or cameras, the most likely result would have been that Messrs. Hamilton and DeMaio would have brought Mr. Umberger elsewhere and left him to die at that location. Perhaps equally likely, given that Mr. Umberger did in fact allow Messrs. Hamilton and DeMaio through the locked door, Mr. Umberger would have waved them past any security guard or disabled the security system. Either way, there is no reasonable inference that additional security measures would have saved Mr. Umberger's life. Under these circumstances, it would not be reasonable for the Court to conclude that the addition of 24-hour security personnel would have resulted in a different outcome for Mr. Umberger. *See, e.g.*, *Fisher v. PaineWebber Inc.*, 1994 U.S. Dist. LEXIS 13229, at *4 (S.D.N.Y. Sept. 20, 1994) (on a motion to dismiss, "[t]he Court is required to draw all reasonable inferences in Fisher's favor, but not all possible inferences"); *see also id*. at *6 ("The issue for the Court is whether Fisher can, drawing all reasonable inferences from the facts alleged, prove a set of facts to support a claim for relief. The Court concludes that Fisher cannot."); *Newmann v. Mediterranean Shipping Co.*, 2019 U.S. Dist. LEXIS 169571, at *6 (S.D.N.Y. Sept 30, 2019) (in granting defendant's motion to dismiss, holding that "the Court cannot draw unreasonable inferences in [plaintiff's] favor[.]")

Thus, even accepting all Plaintiff's allegations in the Amended Complaint as true and

4

drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint fails to adequately plead a claim for negligence and, thus, the first claim should be dismissed.

## II.  PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

As demonstrated in Defendants' opening brief, the Amended Complaint fails to adequately allege "extreme and outrageous conduct,'" as required to state a claim for negligent infliction of emotion distress. *See* Opening Brief at 11-12 (quoting *Truman v. Brown*, 434 F. Supp. 3d 100, 122 (S.D.N.Y. 2020)). In Opposition, Plaintiff does not meaningfully address any of the cases Defendants cited dismissing NIED claims involving much more egregious conduct than what the Amended Complaint alleges the Defendants have done here. Instead, Plaintiff simply repeats the conclusory statement – with no case law support whatsoever – that Defendants' conduct meets the demanding standard of "extreme and outrageous conduct." (Opposition at 13-14.) But it is long settled that Courts "need not accept conclusory allegations or legal conclusions couched as factual [] allegations" on a motion to dismiss. *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (quotation marks omitted); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quotation marks omitted).

Plaintiff's NIED claim also fails as the Amended Complaint fails to plead facts sufficient to support any of the bystander, direct duty, or special circumstances theories. *See* Opening Brief at 12-13; *see also Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000). Plaintiff simply argues that the special circumstances theory has been properly alleged "given the severity and context of the allegations" (Opposition at 14-15) but fails to explain or even cite a single case

5

which sustained an NIED claim under factually analogous circumstances. To the contrary, Plaintiff primarily cites cases where NIED claims were dismissed. *See* Opp. 14-15; *see, e.g.*, *Carney v. Boston Market*, 2018 WL 6698444 (S.D.N.Y. Dec. 20, 2018) (dismissing NIED claim where plaintiff found a baby bird's head in her meal); *Beter v. Baughman*, 2024 WL 4252036 (S.D.N.Y. Sept. 5, 2024) (allegations of sexual assault were insufficient to sustain NIED claim). Given the fact that this theory is rarely applied and only "where there is 'an especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious,'" Plaintiff's conclusory argument must be rejected. *Baker*, 239 F.3d at 421.

### III. PLAINTIFF FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

In the Opening Brief, Defendants established that Plaintiff's tortious interference claim fails as matter of law because: (1) Plaintiff was neither a party to or an intended beneficiary of the relevant insurance contracts; (2) Defendants were not strangers to the contracts they allegedly interfered with; and (3) the Amended Complaint fails to allege that Defendants' putative interference resulted in the insurance carriers' breach. (Opening Brief at 15-17.)

In response, Plaintiff concedes that Mr. Umberger was not a party to the insurance policies. (Opp at 16 (arguing only that Plaintiff was a third-party beneficiary)). Nor does Plaintiff have standing as a third-party beneficiary because the mere fact that a plaintiff may receive proceeds from a defendant's insurance policy is not sufficient to render that plaintiff an intended third-party beneficiary. *See Miller & Wrubel, P.C. v. Todtman, Nachamie, Spizz & Johns, P.C.*, 106 A.D.3d 446 (2013) (malpractice plaintiff held not to be third-party beneficiary to defendant law firm's malpractice insurance policy despite the fact that plaintiff may be entitled to insurance proceeds on that policy). "In order for a contract to confer enforceable

6

third-party beneficiary rights, it must appear that no one other than the third party can recover if the promisor breaches the contract or the contract language should otherwise clearly evidence an intent to permit enforcement by the third party." *Artwear, Inc. v. Hughes*, 202 A.D.2d 76, 82 (1994) (internal quotations omitted). Here there is no such allegation. To the contrary, Plaintiff merely provides conclusory allegations that Defendant's insurance policies *may* provide for some recovery for Plaintiff. Am. Compl. ¶¶ 75, 81. This is plainly insufficient to maintain a claim for tortious interference with contract as a third-party beneficiary.

Plaintiff also concedes that Defendant ACLJ cannot be liable for tortious interference with contract as a party to the contract, but alleges that the claim can be maintained against the remaining Defendants because they are not named on the policies. (Opp. at 17). But New York courts have long held that an executive, director, officer, or member of a company are not strangers to a contract in which their employer is a party. *Ashby v. ALM Media, LLC*, 110 A.D.3d 459, 459 (1st Dep't 2013) (dismissing claims against party's executive who "was not a stranger" to the contract); *Casanas v. Casanas*, 215 A.D.3d 443, 444 (1st Dep't 2023) (dismissing claims against sole member of landlord); *Bonanni v. Straight Arrow Publishers, Inc.*, 133 A.D.2d 585, 586 (1987) (dismissing claims against corporate officer). Jay and Jordan Sekulow are executives of ACLJ. Am. Compl. ¶¶ 10-11. As for CASE and 34 LLC, Plaintiff only alleges that Carringer, an employee of both ACLJ and CASE (and thus also not a stranger to the contract) was addressed letters from the insurance carriers. *See* Am. Compl. ¶¶ 72, 79.

Finally, the Amended Complaint also fails to allege that any third party breached a contract with the Plaintiff and that the Defendants intentionally procured (*i.e.*, caused) such breach. As conceded in the Amended Complaint, it was Defendants themselves that submitted claims on Plaintiff's behalf – a far cry from tortious interference. (Am. Compl. ¶ 69). Moreover,

7

rather than breaching any insurance contract, each of the third-party insurance companies provided their basis for denying Plaintiff's claim in full compliance with such contracts. (Am. Compl. ¶¶ 72, 77, 79). And it is black letter law that, "in the absence of an actual breach of a contract, no claim will lie . . . for tortious interference with that contract." *Romanello v. Intesa Sanpaolo S.p.A.*, 97 A.D.3d 449, 455 (1st Dep't 2012), *aff'd as modified*, 22 N.Y.3d 881 (2013).

Even assuming *arguendo* that the Amended Complaint alleges that at least one of the third-party insurance companies breached a contract with the Plaintiff, the Amended Complaint fails to adequately plead that the Defendants intentionally procured that breach. Specifically, according to the Amended Complaint,

> Defendants intentionally interfered with Plaintiffs' rights under the policies by submitting insufficient claims, failing to dispute the rejection of those claims by the insurance broker, refusing to provide Plaintiffs with unredacted copies of the policies in place, or to even identify all of the potentially applicable policies, and otherwise refusing to assist in the pursuit of insurance claims arising from John's murder inside the Townhouse.

(Am. Compl. ¶ 107). These allegations, even if true, do not demonstrate that Defendants somehow "caused" any of the third-party insurance companies to deny coverage. *See Burrowes v. Combs*, 25 A.D.3d 370, 373 (1st Dep't 2006) (intentional procurement of a third party's breach of the contract requires that "a plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct"). In fact, in *Combs*, the Appellate Division reversed the Supreme Court's denial of a motion to dismiss a tortious interference claim that was based on "mere speculation" and that failed to allege "but for" causation. *Id.*; *see also Washington Ave. Assocs. v. Euclid Equip., Inc.*, 229 A.D.2d 486, 487 (2d Dep't 1996) (tortious interference claim insufficient where "plaintiff merely asserted that the appellant had conversations with Euclid which caused Euclid to breach the lease agreement . . . without a factual basis to support it."); *La Russo v. St. George's Univ. Sch. of Med.*, 936 F. Supp. 2d 288, 305 (S.D.N.Y. 2013), *aff'd*, 747

8

F.3d 90 (2d Cir. 2014) ("[A] complaint based on speculation alone does not state a claim.").

Similarly, in the instant case, the Amended Complaint only offers mere speculation (Am. Compl. ¶ 108) and, more importantly, "has failed to allege that but for [D]efendants' actions," the third-party insurance companies would not have breached their respective contracts with the Plaintiff (assuming there was even a breach at all). *Combs*, 25 A.D.3d at 373.

Accordingly, Plaintiff's tortious interference with contract claim should be dismissed.

## IV. PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION

Finally, Plaintiff's defamation claim challenging Defendants' public denial about public claims filed by Plaintiff are barred by the New York's anti-SLAPP statute and subject to fee and cost shifting. (Opening Brief at 18-20); N.Y. Civ. Rights Law § 70-a. Plaintiff's assertion that Defendant's statements do not relate to matters of public concern as required to invoke the Anti-SLAPP statute have been rejected by New York courts. *See Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10, 19 (1st Dep't 2024) ("Matters of public interest also include judicial proceedings."). Plaintiff's defamation claim should also be dismissed because the allegedly defamatory statements are nothing more than opinions, do not identify the Plaintiff, and were not even made by the Defendants. (Opening Brief at 20-22).

Citing *Zervos v. Trump*, Plaintiff contends that Defendants' counsel's statements concerning the truth of the claims asserted in Plaintiff's original complaint are "categorical assertions of falsity, presented as statements of fact, which are capable of being proven true or false." (Opposition at 21 (citing *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995)). *Zervos v. Trump* is distinguishable because defendant Trump did far more than simply opine that allegations were untrue—he repeatedly called plaintiff herself a "liar" and stated that she fabricated stories for "personal fame, who knows maybe for financial reasons, political

9

purposes[.]" 171 A.D.3d 110, 116 (1st Dep't 2019).[2] No such comments were made here. Indeed, "[i]t is common for parties to commercial litigation to release statements to the press and such statements are non-actionable statements of opinion as to the probabl[e] outcome of the litigation." *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 796 F. Supp. 2d 458, 471 (S.D.N.Y. 2011). For example, in *Gotbetter v. Dow Jones & Co.*, the Appellate Division affirmed dismissal of plaintiff's defamation claim, holding that an attorney's statement calling "plaintiff's suit 'baseless' is not actionable because the cited statement is merely an opinion." 259 A.D.2d 335, 335 (1st Dep't 1999); *see also Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 850 (S.D.N.Y. 2000) (statement that legal claims were "absurd," "ridiculous" and "meritless" were inactionable statements of opinion); *EVUNP Holdings LLC v. Fryman*, 2015 N.Y. Misc. LEXIS 3599, at *14 (Sup Ct, New York County Sept. 30, 2015) (dismissing defamation claim where statements that lawsuits "were 'wrongful' and 'false' would be understood by the average reader as a statement of opinion, and therefore such statements are not actionable"). Because counsel's statements are non-actionable statements of opinion, Plaintiff's defamation claim must be dismissed.

## CONCLUSION

Accordingly, Defendants respectfully request that the Amended Complaint be dismissed. Alternatively, Defendants request that the Court strike the immaterial, irrelevant, and scandalous allegations from the Amended Complaint for the reasons set forth in the Opening Brief (at 22-23).

---

[2] Plaintiff's reliance on *Palin v. New York Times Co.* is similarly irrelevant, as that case turned on the plausibility of actual malice allegations not applicable here. 940 F.3d 804 (2d Cir. 2019).

Dated: October 16, 2025                              Respectfully submitted,

                                                         By: */s/ Michael J. Bowe*
                                                              Michael J. Bowe
                                                              Andrew T. Sutton
                                                              Kate E. Fisch
                                                              565 Fifth Ave.
                                                              New York, NY 10017
                                                              Phone: (646) 653-9378
                                                              Email: mbowe@brithem.com
                                                                        asutton@ brithem.com
                                                                        kfisch@brithem.com

                                                    *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on October 16, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system on all parties.

                                           */s/ Michael J. Bowe*
                                           Michael J. Bowe